Filed 11/26/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| OPTIMAL MARKETS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DAVID SALANT et al., <br><br> Defendants and Appellants, <br><br> CARL LIPPENBERGER et al., <br><br> Objectors and Respondents. | H038571 <br> (Santa Clara County <br> Super. Ct. No. CV147711) |

This appeal arises from an order in which the trial court, after confirming an arbitration award in favor of defendants, denied a separate motion brought by some of the prevailing parties for an award of sanctions against plaintiff's attorneys. The sanctions motion was made pursuant to Code of Civil Procedure section 128.7 on the grounds that the case was "pursued . . . for an improper purpose, and that the claims . . . were not supported by law, nonfrivolous extensions of the law, or fact."[1] The trial court held that sanctions under section 128.7 were precluded because plaintiff's attorneys had been substituted after the filing of the complaint in court and after the judicial action had been stayed pending binding arbitration; therefore, plaintiff's attorneys had not "present[ed] to

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

the court" (§ 128.7, subd. (b)) any pleadings or arguments, as is required by the applicable statute. A similar motion for sanctions brought under Rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.; Rule 11)—the federal statute upon which section 128.7 is based—had previously been denied by the arbitrator for lack of jurisdiction.

On appeal, the parties who had moved for sanctions in the trial court assert that the court erred in finding that section 128.7 did not authorize an award of sanctions. They urge that plaintiff's attorneys, in advancing frivolous claims in the binding arbitration on behalf of their clients, advocated a meritless complaint before the court within the meaning of the section 128.7, thereby warranting the imposition of sanctions under that statute.

We conclude that the court did not err. Accordingly, we will affirm the order denying the motion for sanctions.

## PROCEDURAL BACKGROUND

On July 17, 2009, Optimal Markets, Inc. (Optimal)[2] filed a complaint in the court below against a number of parties (collectively, Defendants),[3] namely, FTI Consulting, Inc. (FTI); Auction Technologies, LLC (Auction, LLC); Auction Technologies, Inc. (Auction, Inc.); Xonomic Inc.; David Salant (Salant); Harold Lea (Lea); and Paul Milgrom (Milgrom).[4] The next month, on August 25, 2009, the parties entered into a written agreement to submit their dispute to binding arbitration pursuant to the JAMS

---

[2] Appellants in their opening brief repeatedly referred to the plaintiff, Optimal Markets, Inc., by the erroneous designation, "Respondent." This error was corrected in the reply brief. To avoid confusion, and because plaintiff was not the aggrieved party in connection with the order that is the subject of this appeal, we will refer to it as "Optimal."

[3] The various parties sued by Optimal were referred to as "respondents" in the arbitration. For the sake of simplicity, we will refer to them herein as "Defendants."

[4] In December 2008, Optimal had filed a similar suit in federal court, which Optimal later dismissed.

2

Comprehensive Arbitration Rules and Procedures. On September 10, 2009, the court entered an order staying the action, pending the conclusion of arbitration proceedings.

Binding arbitration occurred over eight days between February 2010 and March 2010. The matters arbitrated consisted of Optimal's seven causes of action alleged in the complaint it had filed in superior court (misappropriation of trade secrets, common law unfair competition, statutory unfair competition [Bus. & Prof. Code, § 17200], breach of contract, breach of fiduciary duty, breach of covenant of good faith and fair dealing, and declaratory relief);[5] the counterclaims of Salant and Lea for tortious interference with prospective economic advantage and tortious interference with contract (collectively, the tortious interference counterclaims); and the counterclaims of all Defendants for declaratory relief.[6] The arbitrator in June 2010 issued an interim award in which he, inter alia, denied each of Optimal's claims. Later that month, Defendants filed a motion for attorney fees and costs and a motion for sanctions. On July 15, 2010—the day its opposition to the fee and sanctions motions was due—Optimal filed for bankruptcy protection. The stay of further arbitration proceedings was vacated after the United States Bankruptcy Court for the Northern District of California closed Optimal's bankruptcy case on September 20, 2010.

In a 46-page final arbitration award dated May 13, 2011,[7] the arbitrator made final his denial of each of Optimal's claims; denied the tortious interference counterclaims of Salant and Lea; granted Defendants' counterclaim for declaratory relief; and granted

---

[5] At the commencement of the arbitration, Optimal dismissed two other claims (i.e., claims for tortious interference with contract and tortious interference with prospective economic advantage).

[6] The counterclaims had been alleged in the federal court action. (See fn. 4, *ante*.)

[7] The arbitrator had issued a number of interim orders, including interim arbitration awards, between the date the submission of evidence was completed and the date of the final award.

3

Defendants' requests for attorney fees and costs, awarding Defendants $2,563,487 in attorney fees and $221,225 in costs and expenses to be paid by Optimal.[8] The attorney fees and costs were awarded by the arbitrator under two alternative theories: (1) they were awardable under the California Uniform Trade Secrets Act, and specifically Civil Code 3426.4, because Optimal's trade secret "claims [not only were] frivolous when they were brought, but were pursued in subjective bad faith for the improper motive of harassing [Defendants] and frustrating the newly formed business relationship between FTI and Milgrom/Salant/Lea"; and (2) they were awardable "as sanctions to punish [Optimal's] conduct as found [by the arbitrator]," under Rule 11.

Elsewhere in the final award, the arbitrator recited that in an earlier case management order, he had denied "[Defendants'] motion for Rule 11 sanctions against [Optimal's attorneys,] Morrison & Foerster and Lippenberger and Berland." The arbitrator reasoned, in pertinent part, that "while Rule 11 allows the imposition of sanctions against counsel, the parties' Arbitration Agreement does not. The Arbitration Agreement permits the Arbitrator to issue sanctions 'against any party to the extent permitted by Federal Rules of Civil Procedure.' . . . [T]he most reasonable interpretation of the term 'party' in the clause at issue is a party [in] the federal or state action. Morrison & Foerster and Lippenberger and Berland are not and were not ever parties to the federal or state actions, and thus are not included within the term 'party' as used in the Arbitration Agreement."

On January 26, 2012, some of the Defendants—namely, Salant, Milgrim, and Auction LLC (hereafter, collectively, Moving Parties) filed a motion for sanctions pursuant to section 128.7. The motion sought the imposition of sanctions against Optimal's counsel, Lippenberger, and the law firm of Lippenberger, Thompson, Welch,

---

[8] Defendants sought an award from the arbitrator of $3,220,541 in attorney fees and $390,916 in costs and expenses.

4

Soroko & Gilbert LLP. (Law Firm).[9] Lippenberger and Law Firm, respondents in this appeal (hereinafter, collectively, Attorneys), opposed the sanctions motion, arguing, inter alia, that they had not been Optimal's attorneys of record when the superior court action was filed, and had only substituted as counsel in October 2009—after the action had been stayed and four months before the arbitration hearing. Defendants also petitioned the court to confirm the arbitration award;[10] that motion was unopposed.

After a hearing on March 23, 2012, the court adopted its tentative ruling granting the petition to confirm the arbitration award and denying the motion for sanctions. In denying the sanctions motion, the court reasoned that Attorneys never signed, filed, submitted or advocated a pleading to the court; they substituted as Optimal's counsel after the action had been stayed; and "[t]he instant opposition [to the sanctions motion] . . . is the first time Lippenberger has appeared and presented any paper to the Court. Notably, Lippenberger and Plaintiff are not even challenging the petition to confirm the arbitration award." The court thereafter entered formal orders denying the sanctions motion and granting the petition confirming the arbitration award.

Moving Parties filed a timely appeal from the order denying the motion for sanctions. An order denying a motion for sanctions sought under section 128.7 is, under these circumstances, appealable. (§ 904.1, subd. (a)(2); *Day v. Collingwood* (2006) 144 Cal.App.4th 1116, 1123.)

---

[9] Law Firm is also referred to below and on appeal as "Thompson, Welch, Soroko & Gilbert LLP."

[10] The petition to confirm the arbitration award is not part of the record on appeal, but is referred to in the motion for sanctions and in the order confirming the arbitration award and denying motion for sanctions.

5

DISCUSSION

I.     *Denial of the Sanctions Motion Was Proper*

    A.     *Sanctions Imposed Under Section 128.7*

Section 128.7 requires that all pleadings filed with the court be signed by an attorney of a represented party, or, if the party is not represented by counsel, by the party. (§ 128.7, subd. (a).)[11] The signing of a filed pleading constitutes a certification by the person signing it that after a reasonable inquiry, the pleading (1) is not being presented for an improper purpose; (2) contains positions that are not frivolous; (3) alleges factual matter having evidentiary support; and (4) contains denials of factual allegations, which denials have evidentiary support. (§ 128.7, subd. (b).)[12] Based upon these requirements, the court, after proper statutory notice, may impose sanctions upon the attorneys, law

---

[11] "Every pleading, petition, written notice of motion, or other similar paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise provided by law, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." (§ 128.7, subd. (a).)

[12] "By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met: [¶] (1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. [¶] (2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. [¶] (3) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. [¶] (4) The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief." (§ 128.7, subd. (b).)

6

firms, or parties who have improperly certified a pleading in violation of subdivision (b) of section 128.7. (§ 128.7, subd. (c).)[13]

There is a "safe-harbor" provision of section 128.7 with which the moving party must comply in bringing a sanctions motion.[14] "The party seeking sanctions must follow a two-step procedure. First, the party must serve a notice of motion for sanctions on the offending party at least 30 days before filing the motion with the court, which specifically describes the sanctionable conduct. ([(§ 128.7, subd. (c)(1).]) Service of the motion on the offending party begins a 30-day safe harbor period during which the sanctions motion may not be filed with the court. (*Ibid.*) If the pleading is withdrawn, the motion for sanctions may not be filed with the court. [Citation.] If the pleading is not withdrawn, the motion for sanctions may then be filed. [Citation.]" (*Levy v. Blum* (2001) 92

_____

[13] "If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation. In determining what sanctions, if any, should be ordered, the court shall consider whether a party seeking sanctions has exercised due diligence. [¶] (1) A motion for sanctions under this section shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). Notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees. (2) On its own motion, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b), unless, within 21 days of service of the order to show cause, the challenged paper, claim, defense, contention, allegation, or denial is withdrawn or appropriately corrected." (§ 128.7, subd. (c).)

[14] The court must follow a similar procedure if it, on its own motion, wishes to impose sanctions for violating subdivision (b) of section 128.7. (See § 128.7, subd. (c).)

Cal.App.4th 625, 637.) "The purpose of the 30-day safe harbor provision is to permit the 'offending party to avoid sanctions by withdrawing the improper pleading during the safe harbor period. [Citation.] This permits a party to withdraw a questionable pleading without penalty, thus saving the court and the parties time and money litigating the pleading as well as the sanctions request.' [Citations.]" (*Banks v. Hathaway, Perrett, Webster, Powers & Christman* (2002) 97 Cal.App.4th 949, 953, quoting *Malovec v. Hamrell* (1999) 70 Cal.App.4th 434, 441.)

The primary purpose of the statute is deterrence of filing abuses, not to provide compensation for those impacted by those abuses. "While section 128.7 does allow for reimbursement of expenses, including attorney fees, its primary purpose is to deter filing abuses, not to compensate those affected by them. It requires the court to limit sanctions 'to what is sufficient to deter repetition of conduct or comparable conduct by others similarly situated.' (§ 128.7, subd. (d).)" (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 519; cf. *Business Guides v. Chromatic Comm. Enterprises* (1991) 498 U.S. 533, 553: "The main objective of [Rule 11] is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses.")

Section 128.7 was modeled nearly verbatim from the federal statute, Rule 11. (*Board of Trustees v. Superior Court* (2007) 149 Cal.App.4th 1154, 1168; see also *Hart v. Avetoom* (2002) 95 Cal.App.4th 410, 413.) Therefore, California courts may consider federal cases construing Rule 11 in interpreting the language of section 128.7. (*Board of Trustees*, at p. 1169.)

A trial court is to apply an objective standard in making its inquiry concerning the attorney's or party's allegedly sanctionable behavior in connection with a motion for sanctions brought under section 128.7. (*Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 82; see also *Business Guides v. Chromatic Comm. Enterprises*, *supra*, 498 U.S. 533, 558-559 [inquiry concerning proposed sanctions under Rule 11 is based upon objective reasonableness of inquiry, not whether attorney's or party's action was

8

subjectively in bad faith].)  Thus, for example, whether an action is frivolous under section 128.7 is measured by an objective standard.  (*Burkle v. Burkle* (2006) 144 Cal.App.4th 387, 401.)

Ordinarily, a ruling on a motion for sanctions brought under section 128.7 is reviewed under a deferential abuse-of-discretion standard.  (*Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 698; *Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167; cf. *Cooter & Gell v. Hartmarx Corp.* (1990) 496 U.S. 384, 401-405 (*Cooter & Gell*) ["an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination"].)[15]  But where a question of statutory construction is presented in the course of the review of a discretionary decision, such issues are legal matters subject to de novo review.  (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529; see *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175 [although attorney fee orders under private attorney general doctrine of § 1021.5 are generally reviewed for abuse of discretion, " 'de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees . . . have been satisfied amounts to statutory construction and a question of law' "].)  Thus, to the extent the trial court's denial of the motion for sanctions here involved an interpretation of the language of section 128.7, our review is de novo.

B.      *Denial of Sanctions Was Not Error*

Moving Parties argue that the court erred in denying their motion for sanctions pursuant to section 128.7.  They contend that although "the trial court confirmed the

---

[15] *Cooter & Gell*, *supra*, 496 U.S. 384, was superseded in other respects by a 1993 amendment to Rule 11 of the Federal Rules of Civil Procedure; the amendment created the safe harbor provision similar to the one found in section 128.7.  (See *Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 137, fn. 6.)

arbitrator's conclusion that . . . Attorneys advocated frivolous claims in arbitration, it found their advocacy was not 'before the court,' within the meaning of Section 128.7." Moving Parties urge that the court's basis for denying the sanctions motion was erroneous, and "[Optimal] invoked the jurisdiction of the trial court when it filed this action, and the court retained jurisdiction throughout the proceedings, including while the case was in arbitration."

There is no authority supporting the position that a superior court, after a matter has been stayed and ordered to binding arbitration, may impose section 128.7 sanctions for an attorney's prosecution of a client's meritless claim before the arbitrator. Moving Parties acknowledge the absence of such authority. For several reasons, we conclude that under the circumstances presented here, the court correctly held that it could not impose sanctions against Attorneys under section 128.7.

First, by the plain language of the statute, sanctions were not appropriate. Subdivision (c) of section 128.7 authorizes the court to impose sanctions—assuming proper statutory notice has been given and the violation has not been cured during the safe harbor period—when the attorney (or party) has violated subdivision (b) "[b]y *presenting to the court*, whether by signing, filing, submitting, or later advocating, a pleading" that contains, inter alia, claims not "warranted by existing law or by nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," or claims containing "allegations and other factual contentions [without] evidentiary support." (§ 128.7, subd. (b), italics added.) It is undisputed that Attorneys did not file the complaint with the court that was ultimately the subject of binding arbitration. They became Optimal's counsel of record three months after the complaint's filing, and after the dispute had been ordered to binding arbitration pursuant to the parties' agreement. Attorneys thus did not "present[] to the court" the objectionable pleading "by signing, filing, [or] submitting" it. (§ 128.7, subd. (b).) Likewise, Attorneys did not "present[] to the court" the complaint by "later advocating"

10

it. (*Ibid.*)  While Attorneys did advocate the complaint on behalf of Optimal in the binding arbitration, we hold that such advocacy to an arbitrator does not constitute a presentation of the party's claim "to the court" as required under the language of section 128.7.  (*Ibid.*)

Second, allowing the imposition of section 128.7 sanctions under the circumstances presented here would be inconsistent with the limited power the court retains when the judicial action is stayed and the case is referred to binding arbitration pursuant to the parties' agreement.  In general, arbitration submissions are broadly construed to empower the arbitrator to resolve all of the parties' controversies.  (*Van Tassel v. Superior Court* (1974) 12 Cal.3d 624, 627, overruled on other grounds in *Bouton v. USAA Casualty Ins. Co.* (2008) 43 Cal.4th 1190, 1193; see also *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323 ["doubts regarding the scope of arbitrable issues must be resolved in favor of arbitration"].)  " 'Under the rule of broad construction an arbitrator is authorized to determine all questions which he [or she] needs to determine in order to resolve the controversy submitted to him [or her], and the arbitrator himself [or herself] decides which questions need to be determined.'  [Citations.]"  (*Van Tassel*, at p. 627.)  Thus, if a lawsuit is stayed pending a decision through binding arbitration, "the action at law sits in the twilight zone of abatement with the trial court retaining merely vestigial jurisdiction over matters submitted to arbitration."  (*Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790, 1796 (*Brock*).)

This "vestigial jurisdiction" (*Brock*, *supra*, 10 Cal.App.4th at p. 1796) consists of the court being empowered to "appoint arbitrators if the method selected by the parties fails (§ 1281.6); grant a provisional remedy 'but only upon the ground that the award to which an applicant may be entitled may be rendered ineffectual without provisional

11

relief' (§ 1281.8, subd. (b))[16]; and confirm, correct or vacate the arbitration award (§ 1285).  Absent an agreement to withdraw the controversy from arbitration, however, no other judicial act is authorized.  [Citation.]  [¶] In the interim, the arbitrator takes over.  It is the job of the arbitrator, not the court, to resolve all questions needed to determine the controversy.  [Citations.]  The arbitrator, and not the court, decides questions of procedure and discovery.  [Citations.]  It is also up to the arbitrator, and not the court, to grant relief for delay in bringing an arbitration to a resolution." (*Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 487-488, fns. omitted (*Titan/Value Equities*).)  Appellate courts have therefore routinely rejected parties' efforts to have courts overstep their limited jurisdiction in cases that are stayed pending binding contractual arbitration.  (See, e.g., *MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, 661 [court cannot issue order lifting stay based upon party's claim that it cannot afford contractual arbitration]; *Finley v. Saturn of Roseville* (2004) 117 Cal.App.4th 1253, 1259-1260 (*Finley*) [order compelling review of decision by second arbitrator which was provided for in arbitration agreement was unauthorized]; *Blake v. Ecker* (2001) 93 Cal.App.4th 728, 737 [remedy for failure to timely prosecute arbitration was in the arbitration proceeding, not through court order], disapproved on other grounds in *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107, fn. 5; *Titan/Value Equities*, *supra*, 29 Cal.App.4th 482 [order compelling arbitration to proceed under stated conditions involving potential reinstatement to trial calendar was in excess of court's jurisdiction].)

---

**16** "A party to an arbitration agreement may file in the court in the county in which an arbitration proceeding is pending, or if an arbitration proceeding has not commenced, in any proper court, an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." (§ 1281.8, subd. (b).)  "Provisional remedy" is defined in section 1281.8, subdivision (a) as including attachments, temporary protective orders, writs of possession, preliminary injunctions, temporary restraining orders, and appointment of receivers.

In its order referring the case to arbitration, the court here indicated that "this action and any and all proceedings or activity herein are hereby stayed pending conclusion of the arbitration proceedings." The order makes no reference to the court's continuing jurisdiction over the matter. Rather, the court broadly stayed all activity in the judicial action. It was specifically contemplated in the order that once the arbitrator's award had issued, "[a]ny motions to confirm or vacate the arbitrator's award will be filed within the time set by applicable law." Thus, there is no basis for claiming that the court's "vestigial jurisdiction" (*Brock*, *supra*, 10 Cal.App.4th at p. 1796) over the case included entertaining a motion for sanctions, and there is no authority supporting the contention that, once the arbitration award was rendered and subject to a motion to confirm, consideration of such a sanctions motion under section 128.7 was included within the powers of the court.

Moving Parties rely on *Preston v. Kaiser Foundation Hospitals* (1981) 126 Cal.App.3d 402 (*Preston*). There, the plaintiffs brought a wrongful death action arising out of medical malpractice. After the case was ordered to arbitration based upon a written agreement to arbitrate and the arbitration foundered for a number of years, the court granted the defendant's motion to dismiss for lack of prosecution of the arbitration. (*Id.* at pp. 405-406; see also *id.* at pp. 411-412 (dis. opn. of Compton, J.).) The plaintiffs asserted, inter alia, that the trial court did not have jurisdiction to dismiss the arbitration proceedings pursuant to former section 583, once it had ordered the case to arbitration. (*Preston*, at p. 406.) The court rejected this argument, concluding that a trial court retains jurisdiction to entertain a motion to dismiss a matter referred to arbitration when the plaintiff fails to timely pursue the arbitration: "We read the provision of Code of Civil Procedure sections 1281.4 and 1292.6 in combination as investing a court, which has ordered a matter to be arbitrated, with the power on the one hand to entertain a petition by the plaintiff for judicial assistance in moving the arbitration forward where the matter is foundering for reasons beyond plaintiffs' control, or on the other hand, to entertain a

13

motion by defendants to dismiss the arbitration where plaintiffs have failed to exercise reasonable diligence in moving the dispute to a conclusion." (*Id.* at p. 407.)

The holding in *Preston, supra*, 126 Cal.App.3d 402, that the court retains jurisdiction to dismiss a matter ordered to arbitration for lack of prosecution has been disagreed with and not followed in several decisions. (See *Finley*, *supra*, 117 Cal.App.4th at pp. 1258-1259; *Titan/Value Equities*, *supra*, 29 Cal.App.4th at p. 488, fn. 8; *Brock*, *supra*, 10 Cal.App.4th at p. 1804; *Nanfito v. Superior Court* (1991) 2 Cal.App.4th 315, 319, fn. 3; *Byerly v. Sale* (1988) 204 Cal.App.3d 1312, 1316, fn. 3.) In any event, irrespective of the correctness of *Preston*'s holding on this issue, and for the reasons stated in this opinion, we disagree with Moving Parties that *Preston* supports the view that, in the circumstances presented here, the trial court had jurisdiction to impose section 128.7 sanctions for conduct occurring while the matter was stayed and referred to binding contractual arbitration. (Cf. *Jackson v. Smedema Trucking, Inc.* (W.D.Wis. 2008) 536 F.Supp.2d 1009 [rejecting argument that District Court had "roving authority" to impose Rule 11 sanctions for conduct occurring before another tribunal involving an administrative law judge].)[17]

Third, the fact that the decision concerning the imposition of sanctions is a discretionary one (*Martorana v. Marlin & Saltzman*, *supra*, 175 Cal.App.4th at p. 698) strongly militates against the superior court's authority to impose section 128.7 sanctions for conduct occurring before the arbitrator. " 'To exercise the power of judicial

---

[17] This case does not involve judicial arbitration under section 1141.10 et seq. We express no views on the applicability of section 128.7 in court proceedings that are referred to judicial arbitration. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) ¶ 13:118.1, p. 13-46 [suggesting that, in connection with judicial arbitration, sanctions under § 128.7 "may be available if a party 'presents' papers to the court (e.g., an opposition to arbitration) that are entirely without legal or factual merit"].)

14

discretion all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent and just decision.' [Citation.]" (*In re Cortez* (1971) 6 Cal.3d 78, 85-86, fn. omitted; see also *Oldham v. California Capital Fund, Inc.* (2003) 109 Cal.App.4th 421, 430.)

In the context of awarding sanctions under Rule 11, the United States Supreme Court has emphasized the importance of the trial court's close familiarity with the case in evaluating the potential sanctionee's litigation activity. "[T]he Rule requires a [trial] court to consider issues rooted in factual determinations. For example, to determine whether an attorney's prefiling inquiry was reasonable, a court must consider all the circumstances of a case. . . . In considering whether a complaint was supported by fact and law 'to the best of the signer's knowledge, information, and belief,' a court must make some assessment of the signer's credibility. Issues involving credibility are normally considered factual matters. [Citations.] The considerations involved in the Rule 11 context are similar to those involved in determining negligence, which is generally reviewed deferentially. [Citations.] Familiar with the issues and litigants, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11." (*Cooter & Gell*, *supra*, 496 U.S. at pp. 401-402; see also *id.* at p. 404 ["issues involved in determining whether an attorney has violated Rule 11 likewise involve 'fact-intensive, close calls' "]; *Navarro-Ayala v. Nunez* (1st Cir. 1992) 968 F.2d 1421, 1425 ["the decision about whether a litigant's (or lawyer's) actions merit the imposition of sanctions is heavily dependent upon the district court's firsthand knowledge of the case and its nuances"].)

Under the circumstances presented here, Moving Parties' position would suggest that the trial court may exercise its discretion in deciding whether to award section 128.7 sanctions when it has no direct knowledge of any of the issues relevant to such a motion, such as the merits of the legal and factual positions asserted in the arbitration by the proposed sanctionees. This approach is antithetical to the requirement that " 'all the

15

material facts in evidence must be both known and considered' " by the court in properly exercising its discretion. (*In re Cortez*, *supra*, 6 Cal.3d at pp. 85-86.)

Based upon the foregoing considerations, we conclude that under the circumstances presented here, the proposed imposition of sanctions against Attorneys by the trial court under section 128.7 for alleged conduct occurring in the arbitration was neither appropriate nor authorized by law. Accordingly, the court did not err in denying Moving Parties' motion for sanctions.

DISPOSITION

The order denying motion for sanctions under Code of Civil Procedure section 128.7 is affirmed.


                                           Márquez, J.


WE CONCUR:


Elia, Acting P.J.


Bamattre-Manoukian, J.

Trial Court:                                    Santa Clara County Superior Court
                                                Superior Court No.: CV147711

Trial Judge:                                    The Honorable
                                                James P. Kleinberg


Attorneys for Defendants and Appellants         MITCHELL + COMPANY
David Salant et al.:
                                                Brian E. Mitchell


Attorneys for Objectors and Respondents         Law Offices of Carl Lippenberger
Carl Lippenberger et al.:
                                                Carl Lippenberger